This is 4080435, in re. Austin M. We have for the appellant Jacqueline Bullard and for the appellee, Ruth McNeil. Ms. Bullard? May it please the court, counsel. This case presents several issues. Today I intend to direct my argument towards two. The first is the per se conflict of interest that arose by virtue of counsel representing a named victim in the case, and then the second argument will be directed towards the conflict between counsel acting as G.A.L. and defense counsel. Keep your voice up, please. The most straightforward path to reversal in this case is the conflict in counsel representing a named victim in the case. The case law is extremely clear. An attorney may not simultaneously represent a client and so long as there is either a contemporaneous or prior relationship with the victim. In this case, the state charged Austin with having committed acts of sexual abuse against two foster children and his brother, Ricky. The state presented some evidence through one of the videotaped statements that Austin had made sexual contact with Ricky. So in addition to the charging instrument, there was evidence at trial that there was such sexual contact and under those circumstances, counsel was prohibited, a per se conflict arose. Well, I would agree with you on its face. When you first look at this, it does look like a per se conflict. But when I read these cases, it seems to me that the cases all refer to a situation where the attorney has a tie to a person who would benefit from an unfavorable verdict for the defendant. In this case, and that can be waived, but in this case, the defense was none of this happened. It wasn't one of them saying the other one did something to them. The rule in Hernandez, though, is very clear. A victim is a victim is a victim unless there is an adequate waiver. And I will agree with you that at trial, counsel represented that both boys as correspondents disputed that these facts had actually occurred. But the fact is that when an attorney represents a victim, the risks that arise from that type of representation are so high that there has to be a valid waiver on the record. I would give just one example, and again, we don't know because the risks are so high when these per se conflicts arise. But Knowton explains to Austin on the record, first of all, counsel believed that he didn't discuss the conflict of interests that arose between the brothers in any way with the boys. And so what the record reflects is the conflict of interest discussions that took place in terms of explaining to Austin the risks of this dual representation came from the trial court. And the trial court's admonitions were limited to very general admonitions that because you are both correspondents, defense counsel may not be able to vigorously advocate for both of you. Very general admonitions. But why wouldn't that admonition apply to the per se conflict? I agree it's general. How should it have been done differently? Well, there are three cases, two in particular, two Supreme Court cases that are instructed on that point, and those are Coslett and Stovall. In Stovall, the defendant was aware that his attorney had a simultaneous and a prior relationship with, it was a smash and grab burglary, and counsel himself had a prior relationship with the jewelry store owner and his firm had a contemporaneous relationship with the jewelry store owner. And what the Supreme Court said, it's not enough that the defendant knows that a conflict exists. There has to be an admonition that explains the significance of the conflict and how that conflict might affect the representation. So, for example, in this case, if Ricky were portrayed as more of a victim in this, the state's theory was there was lots of sexual activity going on in the household between all of the children. If Ricky were portrayed as more of a victim in this case, that would increase his chances, perhaps, of acquittal and so counsel with his duties to Ricky in trying to seek Ricky's acquittal. May soft pedal Austin's defense and vice versa. Ricky suffered under the same sort of problems as Austin did in this case. Ricky just had the good fortune of having an acquittal entered. But there's no, and there's no suggestion in here as there was, when Coslett talked about this, in Coslett there was a conflict between the attorney who represented the estate of the defendant's alleged victim. And Coslett went beyond just focusing on the fact that the accused was aware of the conflict. The court focused, for one, on the fact that the defendant had no awareness, there was no demonstration in the record that the defendant was aware of the complexities of estate law. A similar analogy is true in this case. Austin had no prior experiences in the criminal justice system or the delinquency system. He knew literally nothing about the system from what the record tells us. And in fact, he didn't even really understand the role of his attorney because the court had admonished him early on that your attorney has the right to override what you want in this case if the attorney thinks it's in your best interest. So even if you tell Austin that this conflict exists, he's also been told by the judge on an earlier occasion that it really doesn't matter because your attorney can do what your attorney wants to do anyway as long as the attorney thinks it's in your best interest. And within this colloquy between the judge and counsel, counsel actually said, I think it's in the boy's best interest for me to represent both of them. So I would argue that the waiver in this case, there just wasn't enough information shared with the minor about exactly how this conflict with Ricky as a victim could impact counsel's representation in this case. Can you point to anything in the record that would indicate that defense counsel did anything other than represent both of the boys to the best of his ability? Your Honor, I would preface my comments with the fact that that's not necessary in a per se conflict. And as discussed in the minor's brief, there were a whole host of mistakes that counsel made in this case that were attributed to his role as guardian ad litem in this case. You say his role as guardian ad litem. Who appointed him GAO? He was not appointed. The parents in this case retained the attorney on behalf of the parents. He just acted like a GAO is what you're saying. He did. That wasn't really two roles. I mean, you've used this language that you can't be both a lawyer and a GAO. I agree with that, okay? But he was never a GAO. He was just a bad lawyer is what you're saying. I think it's both. I think a lot of his bad lawyering was attributable to how he saw himself. At the first hearing, the trial court admonished the boys and their parents. You're entitled to an attorney. And oh, by the way, the attorney is the one who makes the important calls in the case if the attorney thinks something is in the boys' best interest, even if the boys disagree. Defense counsel did not dispute that characterization of himself. He did dispute the fact when the court gave a discussion arose where the court initially believed that counsel represented the parents, counsel piped right up and said, no, no, no, I only represent the boys. I'm not representing the parents in this case. But counsel didn't make any type of correction at that point when the trial court described exactly what the scope of counsel's representation was. And thereafter, when counsel explained all of the reasons why he wasn't contesting the videotapes, why he was taking the actions that he was, why he was engaging in joint representation, that discussion was replete with, we're all seeking the truth. I'm just like the prosecutor. I'm just like the parents. We all want to know what happened. And my argument with you is not based on what happened at trial, but how you've characterized it. You say he's acting like a GAL. I'm saying he's acting like a bad lawyer. Either one, your honor. It comes to the same point. Sure. Absolutely. Absolutely. And I think that that is true. This issue of a GAL, whether a counsel can act as GAL and defense attorney at the same time, however, is an important issue. For example, this particular issue was argued, the GAL defense counsel issue was argued just a couple of weeks ago before this court in Ray Rodney S. So it is the type of problem that occurs not infrequently, not in every county, but in some counties where an attorney who's supposed to be a defense attorney behaves like a guardian ad litem. And that poses tremendous risks to minors who come before those delinquency courts. Well, let me complicate your life further than that. Reading the record, it strikes me that the true situation is that mom and dad came to Mr. Novak's office and said, oh, my God, we've got this huge problem, and we've got these two kids, we've had these other foster kids that are just wild Indians, and just, they're doing horrible things, and now our two kids are in great difficulty. Will you help us? Mr. Novak, you know, obviously he's not retained by the two juveniles, they don't have any money. He's retained by the parents, and he's trying to solve a family problem, which involves collaterals who are foster children. And keeping DCFS at bay. I mean, he's got a lot of problems he's trying to solve for this group of folks. He is, and again, I think that sort of brings us to one of the arguments that's contained in the brief, which is that there was also, I believe, an actual conflict that arose based on the counsel's relationship with the parents. That what the parents wanted was not necessarily an acquittal for these boys. A lawyer whose child is in conflict with the law, the first question that a lawyer asks himself or herself is not, who's the best GAL I can get my hands on? The question is, who's the best defense attorney I can get for my child? The parents in this case didn't have the benefit of that knowledge. It's what makes giving children purely defense attorneys so very important, because parents who aren't lawyers, who don't have familiarity with the system, that defense attorney is the only stop between the accusations and that child actually being adjudicated, and consequences that are extremely serious for minors in Illinois. Especially after the amendments to the Juvenile Court Act in 1998 that took effect in 1999. In addition to providing, threatening the fairness of a juvenile's right to a fair trial, if attorneys, and I'll agree with you, if you want to give me relief and say he was a bad lawyer and it was ineffective assistance of counsel and will reverse the trial, will reverse the adjudication, that's fine. But if there is still some discussion on the GAL versus defense counsel issue, it places attorneys in nearly impossible positions when they are expected to both defend an accused delinquent minor and also worry about the best interests of that minor. There is no place for a GAL, first of all, at the guilt and innocence phase. A minor has the right to be proven guilty beyond a reasonable doubt, and that takes a lawyer, not a GAL. What's your best case in Illinois on that point? NRABK recognizes that a conflict of interest can arise under dual representation. Whenever the minor is of an age to share confidences with his attorney. NRABK did not find that that potential conflict gave rise to a per se conflict. I would disagree with that, and I think that maybe the easiest way to envision that is when that client walks into your office as an attorney for the first time and you have that initial discussion with your client. As a defense attorney, your goal is to seek acquittal by all means fair and honorable. And sometimes that means you don't want full disclosure from your client because it might interfere with how you challenge the state's case further down the line. In contrast, the other side of you, as GAL, wants to know everything there is about the case because what you want to do is you want to do good for the child and you need to have all of the facts at your disposal in order to do that. So as a defense attorney, do you not ask questions because you don't want to interfere with the defense? As a GAL, do you ask too many questions and harm the role of defense counsel? Imagine that the client shares a confidence with you. Says, yeah, I'm guilty, I did it, that's it. As a GAL, you may believe that an adjudication is in that minor's best interest because you're in a small county where there aren't mental health services and the only way that you're going to get services for this kid is if you run him through the delinquency system. What do we do with the statute that says, under the Act, that says appointment of separate counsel is unnecessary when the trial court has already appointed a guardian ad litem who is also a licensed attorney unless the court finds that the minor's interests are in conflict with what the guardian ad litem determines to be in the best interest of the minor? That particular statute needs to be read as a whole with all of the provisions of the Juvenile Court Act that govern issues of counsel. There is one provision in the Juvenile Court Act that was added in 1998, became effective January 1st of 1999, that when the Act was essentially adultified and more criminalized, the legislature added the following guarantee. In all proceedings under this article, minors shall have all the procedural rights of adults in criminal proceedings unless specifically precluded by laws that enhance the protection of the minors. And then it goes on to say that minors are not entitled to a jury trial. This provision of the Act says minors get all of the procedural protections and that means a lawyer. In fact, the lawyer is probably the most important of those rights because the right to confront and cross-examine, to hold the state to its burden, to get adequate notice, none of those rights can be vindicated by a 15-year-old kid. You need a lawyer who has a mastery of the law to do that. So my position first is that that very specific provision of the Act says children in delinquency proceedings get a defense attorney. In terms of the guardian ad litem statute, I would argue that that statute, when it talks about the court, may appoint a guardian ad litem for the minor if there is a conflict. And then Provision 2, which is unless the guardian ad litem is an attorney, he or she shall be represented by counsel. I think that these counsel discussions in this particular section governing guardian ad litem says you get a separate guardian ad litem. If the separate guardian ad litem is an attorney, you don't need to appoint another attorney. But if the guardian ad litem is not an attorney, then you have to represent an attorney to represent the guardian ad litem. And then I would also just additionally note in the waiver of counsel, and actually... Aren't you actually asking us to change the very tenor of all of these juvenile proceedings and make them as adversarial as what they are in criminal court? No, Your Honor. The legislature did that, went a long way towards doing that in 1998. Well, they didn't go all the way, obviously, because they still have the statute. No, they did not. And just in terms of the practicalities of juvenile court, again, you can't have a GAL at the guilt or there's no place for a GAL. The place for a GAL is at sentencing. When the legislature revised the Juvenile Statute, the Juvenile Act, did they provide funding for this additional defender and GAL? No. Counties still absorb those costs. And that was one concern that the appellate court in the 5th District mentioned in The need for a guardian ad litem is the exception, not the rule. You don't need a guardian ad litem in every case. So I would argue that this is not to say that the defense counsel can't also act as a GAL. It's not going to impose any tremendous costs on counties. What it's going to require counties to do is look and say, do we really need a GAL in this case? Counties are going to have to make those choices. But you can't allow costs to interfere with these fundamental rights to a fair trial. I would add just lastly that there is nothing about providing a juvenile with a defense attorney that interferes with the rehabilitative aims of the Juvenile Court Act. First of all, the way you get to truth is through an adversarial process where two attorneys are going at it and the truth emerges. It is the trial court's job to determine what's in the minor's best interest. And it also furthers the truth-seeking process. If the balance is skewed and defense counsel thinks that his client probably did it or maybe did it or even if he didn't do it, the services that are available are going to help his client, that truth-seeking function of trials is severely damaged. If a minor is guilty and the state does their job and proves that and doesn't rely on the attorney to help them along, then the truth is going to emerge and the trial court will then be able to make that best interest determination at sentencing in terms of disposition, in terms of what services or what consequences we provide to a child to help that child not re-offend in the future. When was the amendment made to the Juvenile Court Act that you were referring to? The amendment to the Act was in 1998 and the effective date was January 1, 1999. So there have been several cases that have dealt with this issue since that amendment, correct? The cases primarily precede this amendment. The old cases that say we're all in it for the best interest of the child and the GAL should be overriding the minor's interests. First of all, we're aimed at sentencing cases where best interest is more at issue and also precede this case. BK was 2005. Yes, and BK, the court found that there was potential for actual conflict but rejected the notion that a per se conflict of interest arises. Thank you. Thank you, counsel. Mr. McNeil? In regards to the per se conflict, the Illinois Supreme Court recognized both the 1998 amendments to Article V and the difference between criminal and juvenile proceedings in Henry Rodney H., stating that Article V may represent a fundamental shift from the singular goal of rehabilitation, but proceedings under the Act are still not criminal in nature. Delinquency proceedings are protective in nature and the purpose of the Act is to correct and rehabilitate, not to punish. Indeed, no suggestion or curtain of criminality attaches to any finding of delinquency by a juvenile court. Unless, of course, they're convicted of a crime as an adult and then their juvenile record is held against them at time of sentencing. Fair enough. And this court also found that the goals of our guardian ad litem and minor's counsel aren't inherently in conflict in Henry J.D. That was, I think, 2004, stating that both roles have essentially the same obligations to the minor and to society. An attorney appointed by the court in a juvenile proceeding must not only protect the juvenile's legal rights, but he must also recognize and recommend a disposition in the juvenile's best interest, even when the juvenile himself doesn't recognize those interests. Here, this really doesn't apply because the attorney, Mr. Novak, acted not only in the child's best interest throughout the proceedings, but also acted consistent with what the minor desired himself, that being acquittal. Well, if that's the case, why wasn't there a motion to suppress the statement file? Because that motion would be fruitless as that was a voluntary statement anyway. With the chief of police yelling at you when you're 15 years old, how does that make it voluntary? Well, very loud and aggressive was a term his father used to describe it in his testimony. He was a witness, right? But there wasn't even a test as to whether or not the statement was admissible, was there? Because no motion to suppress it was filed, isn't that right? Yes, but I'm saying that filing it wouldn't make it... there was no prejudice. Well, you can't have a judge take a look at the admissibility unless you file a motion, isn't that right? Sure, but I'm saying that for an ineffective assistance to counsel claim, I don't think it was objectively unreasonable for counsel not to file that motion. How about the consent that the video statement comes in? That had benefits for... that had actual benefits for the respondent, being that the state agreed to only pursue probation instead of incarceration. And I think even counsel mentioned that, of course, he's giving up the right to cross-examine the witness, but he's also... the state's giving up the right to have live testimony in court, which is much more effective. Well, you know, obviously none of us in this room have any first-hand knowledge of the quote-unquote victims, in this case, who more than likely were at least complicit, if not the aggressors, in terms of initiating sexual conduct. But it is just beyond my imagination that you would give up the opportunity to cross-examine those troubled children in order to somehow guarantee what I would think is going to be probationable anyway, probation to your client. It's just beyond me. Again, assuming that counsel saw the videos, he knew that the allegations were pretty ridiculous. Oh, they're disgusting. And he was right. The respondent wasn't prejudiced. It wasn't used to prove the respondent was guilty beyond a reasonable doubt. None of the content of the videos. So looking at the second prong of an ineffective assistance to counsel claim, the respondent wasn't prejudiced by that decision. He benefited. That being that he only got probation instead of incarceration. As far as the conflict, I guess it would be per se conflict between the respondent and the respondent's brother, being represented by the same counsel. Here there would be no risk at all as a result of counsel representing both of them. It's on record early in pretrial that the defense for both the respondent and his brother was that the allegations were all false. The cases that the respondent cites for a per se conflict, that being Stobel and Coslett, both of those victims, this isn't a case where here there's a common defense that all of the state's allegations are false. In Stobel and Coslett, both victims would benefit from a guilty verdict even if that's just a justice for their wrongdoing. And in Coslett, especially the defenses and the legal issues were very complex for a defendant to know about, especially when applying it to the conflict of interest that could arise in that case. Here, like I said, pretty straightforward, the respondent and his brother both have the same defense, that being that all the state's allegations were false. So, again, I don't think Stobel and Coslett proved that a case such as this, a per se conflict would arise from it. Also, I think the respondent expressly waived any conflict issue here. Here's the quote from the trial court to respondent. You are giving up the right to make any objection about the fact that Mr. Novak is representing both of the minor respondents, that somehow this was a conflict, or that he didn't adequately represent both of them, or one person was better represented than the other, or that the defense of one is that the other did it and I'm not involved. You are giving up any claim that the proceedings were not proper because Mr. Novak represented both. Is a 15-year-old capable of giving up his rights? Well, if we're... I mean, not only him, but his parents, too, and his brother all said, all expressly waived any conflict issue. But like I said, there wasn't an actual conflict here, or a per se conflict. And I think, he was 16, and I think, again, I think a 16-year-old would understand the basic concept that we are innocent, which is what their defense was. Was there some evidence that this respondent was developmentally disabled in some fashion? There was some evidence of that. He used all the same textbooks as his 16-year-old classmates. But we don't know the extent of his disability because nobody ever set it forth with record, right? True, but we do know that he used the same textbooks and that he was in the same classes. I think he was in special classes for a portion of the day. But I don't think it's outrageous for even a 16-year-old below slightly average intelligence to be able to deny any of the state's allegations and say that the victims were lying. And I don't think that, again, that was the common defense. So I don't think that the waiver here, there were any complex issues that made the waiver invalid. As far as the conflict of interest involving the parents and counsel, again, there can't be an actual conflict of interest because the parents, at least by virtue of their testimony, were going for the same goal as respondent and counsel, that being that the victims were lying and that there was no sexual activity between the children. Respondent's father's testimony denied even the respondent made any admissions at the police station and also denied that any sexual activity was going on in the house between his children. He did say that he would want to know, I think any parent would want to know, if there was sexual activity going on between their children and that if there was, government intervention would not be inappropriate. But, of course, this was all in the context of his outright denial that any of this happened. So, as far as any adverse interest between parents and respondent, that didn't exist. It's actually the opposite. Again, as far as the dual roles of guardian ad litem, there's no evidence in this case that respondent's counsel ever acted as guardian ad litem. He only pursued the goal of acquittal. He argued that... What did he mean when he said, we're only here for the best interest of these boys? I think he said we're here to seek the truth. And is that what a defense lawyer is there to do? Again, I think that that was an argument. That question was somewhat pejorative. Yeah, I mean, I would hope that he's not there to not seek the truth. But, again, that was an argument and all of his positions and all of the evidence he presented were consistent with the fact that the state's allegations were false and that the respondent should be acquitted. Even if he said that, again, I think you need to look at where he said that  And as far as the ineffective assistance of counsel, again, I submit that the respondent benefited from all of counsel's decisions. So the prejudice prong would not be proven here. And likewise, the first prong, the objectively unreasonable prong, Excuse me, I have to go back to that comment that you made before. What is a defense lawyer's obligation in a case? To see if the truth is brought forth in the courtroom or to see that his client has a fair trial? To see that his client has a fair trial. And I think that counsel here did that. Again, all of his arguments, all of his evidence were consistent with the goal of acquittal throughout the proceedings. And it wasn't objectively unreasonable for him, again, to make that decision, although it's unorthodox to allow the videotaped statements in. Again, it benefited the respondent. It didn't prejudice the respondent. And in the order, it specifically stated that those taped statements lacked credibility. So I would say that counsel's decisions were a success. Where are these foster children now? Do you know? I have no idea. Are there no more questions? No more questions. Thank you. Just very briefly. At the risk of casting aspersions on my fellow defense brethren, our job is not to seek the truth. Our job is to make sure that there's a fair trial and that the truth emerges from that. I just want to respond to three things very quickly. The first, the notion that these proceedings are still sufficiently rehabilitative and not criminal in nature. I think that any child, including Austin, who's been through the delinquency system would be very surprised to know that this is not a criminal proceeding. There are criminal charges. There are trials. The state is trying to either at best put you on probation and at worst put you in a correctional facility that has the same bars, cement beds, barbed wire, and prison guards as any adult facility. These are very much like criminal proceedings. But isn't it the legislature's job to decide to pass a law that says that, I don't want to phrase a statute, but that recognizes this per se conflict that you're arguing that a GAL is separate from the defense lawyer and there should always be a separate defense lawyer. I actually would argue that the Act does that. The Act in Section 1013 says you get the same guarantees as an adult. But in that other section it does not. The second provision when it talks about that minors can't waive attorneys, the statute doesn't simply say that the minor can't waive an attorney in a delinquency proceeding. The language of the statute is, in a judicial proceeding under this article, a minor may not waive the right to the assistance of counsel in his or her defense. They add it in his or her defense. Not as a GAL, not as an attorney to look out for what's best for you. You can't waive a defense attorney. And then by providing for a guardian ad litem, I think that's a recognition, the legislature's recognition that these are two distinct roles. They talked about defense counsel in Section 1013. They said you can't waive an attorney in your defense. And then there's this separate statutory provision that talks about  where there's a possibility that a GAL is in the minor's best interest. This section of the statute recognizes that the GAL is a separate role. If the legislature envisioned that the same defense attorney who was charged with defending the case also had to act as a GAL, this whole GAL provision would be redundant because every defense attorney who would step into the courtroom would also be serving this GAL role. The fact that the legislature created this provision for a separate GAL, I think, reflects a recognition on the part of the legislature. Your request, does it just go back for a new trial? My bottom line request is that it be vacated because the state failed to prove the boy guilty. And he was sentenced to 24 months probation, which was back in August of 2007. Yes. So that's been served. He's now 21 years of age. I totally understand. The goal is to get the adjudication off his record and primarily so that he doesn't have to register as a sex offender. I think there's a tremendous likelihood that if this case goes back, the state's not going to be able to prove this case up if Austin has a defense attorney who's actually working to vindicate his rights. It really is that very real concern with Austin having to register as a sex offender and having this sex offense and this adjudication on his record that it's incredibly important to him to have this adjudication vacated if possible. Thank you, counsel. We'll take this matter under advisement and recess for the lunch hour.